IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NO:  1:24-cv-69

| | | |
|---|---|---|
| BUBBLE GIRL, LLC | * | |
| | * | |
| Plaintiff | * | |
| vs. | * | |
| | * | |
| DECIBELS PER MINUTE, INC., d/b/a | * | |
| WILCO; | * | **PLAINTIFF'S COMPLAINT** |
| | * | |
| KUNG FU NATION, INC.; | * | |
| | * | |
| RHINO ENTERTAINMENT COMPANY; | * | |
| * | * | |
| WARNER RECORDS INC., d/b/a | * | |
| REPRISE RECORDS; | * | |
| | * | **JURY DEMANDED** |
| WARNER MUSIC GROUP CORP.; | * | |
| | * | |
| WEA INC.; and | * | |
| | * | |
| DOES 1 through 10, | * | |
| | * | |
| Defendants | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT AND JURY DEMAND

Plaintiff Bubble Girl, LLC ("Bubble Girl") files this Complaint and Jury Demand against

Defendants Warner Records Inc. d/b/a Reprise Records ("Warner Records"), Rhino Entertainment

Company ("Rhino"), Warner Music Group Corp. ("WMG"), WEA Inc. ("WEA"), Decibels Per

Minute, Inc. d/b/a Wilco ("Wilco"), and Kung Fu Nation, Inc. ("Kung Fu"), under the U.S.

Copyright Act of 1976 ("Copyright Act") and the Digital Millennium Copyright Act ("DMCA").

Defendants Warner Records, WMG, WEA, and Rhino are collectively referred to as "Warner

Entities."

## INTRODUCTION

1. Defendants, individually and collectively, have violated the Copyright Act. They have directly, contributorily and vicariously infringed Plaintiff's valid and timely-registered copyright in a photograph of a woman blowing a huge bubble with bubble gum (the "Original Work") created by photographer Jack Moebes ("Jack") by: (1) creating, displaying, and distributing multiple works that incorporated unauthorized derivatives of the Original Work; and (2) reproducing, displaying and distributing the Original Work and/or a derivative of the Original Work on merchandise without authorization. Defendants further failed to give Jack credit, and displayed misleadingly false credits, in connection with infringing products in violation of the DMCA.

## THE PARTIES

2. Plaintiff Bubble Girl is a single member LLC organized and existing under the laws of the State of North Carolina, with its principal place of business in Alexander, NC, which is in this District. Bubble Girl, as Jack's successor-in-interest, solely owns a valid and timely-registered copyright in the Original Work.

3. Defendant WMG is a Delaware corporation authorized to do business in New York and California, with principal place of business in New York, NY and offices in New York, NY, Los Angeles, CA, Nashville, TN and Miami, FL. Upon information and belief, WMG is involved in the distribution and advertising of products relevant to this dispute.

4. Defendant WEA is a Delaware corporation authorized to do business in New York, NY with principal place of business in New York, NY and with offices in New York, NY, Los Angeles, CA, Atlanta, GA and Minneapolis, MN. Upon information and belief, WEA is involved in the distribution and advertising of products relevant to this dispute.

5.     Defendant Rhino is a Delaware corporation authorized to do business in New York, NY and Los Angeles, CA with principal place of business and offices in Los Angeles, CA. Rhino distributes and advertises products relevant to this dispute.

6.     Defendant Warner Records, individually, and doing business as Reprise Records, is a Delaware corporation authorized to do business in New York, NY and Los Angeles, CA, with principal place of business and offices in Los Angeles, CA.   Warner Records distributes and advertises products relevant to this dispute.

7.     Defendant Wilco is an Illinois corporation organized and existing under the laws of the State of Illinois with its principal place of business in Springfield, Illinois and offices in Chicago, IL and Nashville, TN.  Wilco is a nationally recognized music band that tours throughout the United States, including in this District, and internationally, selling the albums and merchandise that are subject to this dispute.

8.     Defendant Kung Fu is a North Carolina corporation with its principal place of business at in Raleigh, NC 27604. On behalf of Wilco, Kung Fu distributes Wilco's products, including the albums and merchandise that are the subject of this dispute, to residents of the United States, including this District, through wilcoworld.net ("Wilco Site") and kungfunation.freshdesk.com ("Kung Fu Site").

9.     During all time periods relative to this dispute, Defendants, in one capacity or another, are and were in the business of producing record albums containing prerecorded music, artwork, photos and text, and selling, distributing, marketing and advertising such albums, including the infringing album and other albums relevant to this dispute, in physical and digital formats directly through, *inter alia*:   (a) their online stores at rhino.com ("Rhino Site"),

warnerrecords.com ("Warner Site"), the Wilco Site and the Kung Fu Site", all of which sites ship

such products throughout the United States, including to residents of this District; (b) third-party

online and brick-and-mortar distributors operating throughout the United States, including in, and

to the residents of, this District, and internationally; and (c) digital streaming platforms, including

Amazon Music, Apple Music, Spotify, Pandora, and YouTube Music ("DSPs"), that Defendants

know will stream to purchasers throughout the United States, including to residents of this District.

10.     Upon information and belief, Defendants Warner Records, Rhino, and Wilco also

send marketing emails to residents of this District and the State of North Carolina.

11.     In the time period relevant to this dispute, Wilco toured in this District on August

19, 2021, selling the infringing albums and merchandise from which Defendants derive and

derived financial and other benefits and that are the subject of this dispute and which the Warner

Entities facilitated through sublicense of rights in the album and otherwise to Wilco and others.[1]

12.     WMG from time-to-time employees student ambassadors and others in the State of

North Carolina as influencers and to otherwise conduct and promote WMG's business in this State.

13.    Certain songs contained on the infringing and other albums relevant to this dispute

and through which the Defendants derive financial and other benefits and facilitated and financed

were recorded in this State, in Kernersville, NC.

**JURISDICTION**

14.     This action arises under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq*., as

hereinafter more fully appears.

15.     This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 (a) and (b).

_____

[1] Defendant Wilco also toured North Carolina on or about April 28, 2023, and April 29, 2023.

16. This District has personal jurisdiction over all Defendants under N.C. Gen. Stat. § 1-75.4 (1) d. and (4) in that: (a) all Defendants or their agents engage in substantial activity in this State and this District, whether wholly interstate, intrastate or otherwise District; (b) the claims of infringement by Defendants or their agents of the copyright owned by Plaintiff, who resides in the this State and this District, arise out of an act or omission outside the State of North Carolina and all of Defendants or their agents acting on their behalf at or about the time of the infringement to Plaintiff's copyright provided solicitation and/or services activities within this State and District; and/or (c) all of the Defendants processed, serviced or manufactured infringing products used or consumed within this State and District in the ordinary course of trade.

## VENUE

17. Venue in this District is proper under 28 U.S.C. § 1391 (b) (1) and 1400 (a) in that this is a judicial district in which a substantial part of the acts and omissions of Defendants or their agents giving rise to the claims occurred; and/or under 28 U.S.C. § 1391 (b)(1) and (3), (c)(2) and (d) and 28 U.S.C. §1400 (a) in that all Defendants or their agents are subject to the Court's personal jurisdiction with respect to the civil action in question and are found in this District.   Plaintiff's claim arises in this District and Plaintiff resides in this District.

## STATEMENT OF FACTS

**A.  Plaintiff and the Photograph Forming the Subject Matter of this Dispute.**

18. Jack was a photographer who gained world-wide recognition for, among other body of work, his civil rights photography, particularly of the four black North Carolina A&T State University students who precipitated the Sit-In Movement when they sat at a Woolworth's lunch counter in Greensboro, NC in 1960, which images are installed in two Smithsonian museums and have been used in numerous documentaries, museum exhibits and the like.

19. In 1975, Jack created the Original Work. *See* Ex. A.

20.     On November 11, 1997, Jack entered an agreement with Corbis Corporation ("Corbis") to act as Jack's licensing agent with respect to approximately 260 images of Jack's photo collection, including the Original Work. This agreement remained in place until 2016.

21.     Jack died in 2002 and left his photo collection in the trust of his estate with his daughter, Anne Moebes ("Anne"), as sole trustee with sole discretion over the trust. Anne transferred the photo collection to the Jack Moebes Photo Archive, LLC, which in turn transferred the copyright in the Original Work to Plaintiff Bubble Girl, of which Anne is Executive Director.

22.     The Original Work was first published in 1998 on Corbis' website, corbisimages.com ("Corbis Site"), as a rights-managed ("RM") editorial image.

23.     Upon information and belief, the webpage on which the Original Work appeared described it as "Woman Blowing a Huge Bubble with Gum", included the image ID #BE066791, named the author of the photo as "John G. Moebes" (aka Jack Moebes).

24.     Corbis timely registered Jack's 260 Corbis collection images, including the Original Work, as part of group photo registration VA 927-087, dated April 3, 1998.

25.     Corbis reassigned the copyright in all of Jack's Corbis collection images, including the Original Work, to Jack on January 22, 1999.

26.     As Jack's successor-in-interest, and as owner of all right, title and interest in the copyright to the Original Work, Bubble Girl enjoys, among other things, the exclusive right to reproduce, publicly display, distribute and make derivative works of the Original Work.

27.     In 2016, the Visual China Group ("VCG") acquired Corbis and arranged to have Getty Images ("Getty") be its exclusive distributor of Corbis' images in the United States.

28. As a result of the sale of Corbis to VCG, as trustee to Jack's estate, Anne terminated Jack's contract with Corbis, did not sign with Getty, and took over sole administration, including licensing, of Jack's photo collection, until present, as Executive Director of Bubble Girl.

**B. Defendants and Their Infringing Conduct.**

29. Upon information and belief, Lawrence Azerrad ("Azerrad") in collaboration with a principal of Wilco, Jeff Tweedy ("Tweedy"), and the Warner Entities' project management team designed and produced the cover art for first "Wilco Summerteeth" album which was released by Warner Records' Reprise label on March 9, 1999 (the "1999 Album").

30. Upon information and belief, at the time of the 1999 Album, Azerrad was an employee of Warner Records and Wilco was associated with Warner Records' Reprise label.

31. Upon information and belief, Azerrad and Tweedy saw the Original Work on the Corbis Site and selected it for the cover of the 1999 Album. Thus, Azerrad and Tweedy would have been able to see Jack's credit, any copyright notice, any Corbis terms and conditions ("Corbis Terms") to which any license of The Original Work would have been made subject, and any IPTC metadata ("Metadata") embedded in the Original Work image.

32. Corbis issued a license to Defendant Warner Records (f/k/a Warner Bros. Records) on January 20, 1999, for the use of the Original Work pursuant to Invoice # 19353 ("Invoice 19353"), for use on "CD-ROM - Consumer". A true and accurate copy of the royalty statement (excepting non-relevant redactions) referring to Invoice 19353 is attached as Ex. B. The royalty statement does not indicate on which album Warner Records intended to use the Original Work.

33. Upon information and belief, it was also Corbis' practice to state any rights granted in the invoice, sometimes in conjunction with, or with reference to, rights stated in an ancillary term sheet or contract with the licensee and to include any applicable Corbis Terms. For illustrative

7

purposes only, a true and accurate copy (except for column justification) of an exemplar version of such terms and conditions is set forth in Ex. C. For illustrative purposes, a true and accurate copy of an exemplary invoice from a lawsuit in an unrelated case is set forth in Ex. D.

34. When Warner Records licensed the Original Work, Corbis issued it an invoice (Invoice #19353), and, upon information and belief, provided Warner access to a digital file of the Original Work that would have contained any Metadata.

35. Upon information and belief, Warner Records then provided this digital file to Azerrad, who used it to create the 1999 Album's cover.

36. The 1999 album's design is simply the Original Work, cropped for space limitations, with the word "summerteethwilco (sic)" placed over the middle and limited brand iconography in the upper right corner. *See* Ex. E.

37. In 2020, Rhino and Wilco released a Deluxe Edition of the 1999 Album ("2020 Album").

38. Azerrad – now the owner of his own design company, LADdesign – created the album art of the 2020 Album for Rhino, in close collaboration with the Warner Entities' product management team, as well as Rhino's legal contact, Kent Liu ("Liu"), Wilco's Tweedy and Wilco's legal contact Jamie Herman ("Herman").

39. In addition to remastering the music itself and adding additional music tracks, Defendants created unauthorized derivatives of the Original Work to use in connection with the 2020 Album, including multiple covers for the exterior and interior of the CD and Vinyl box sets, digital downloads, streams, and for use in associated marketing materials. Specifically, Defendants created:

      a. A copy of the Original Work, as previously cropped for the 1999 Album, with a blue wash applied in such a way that many of the original details and

luminescence of the bubble have been lost, and additionally metallicized in the resulting derivative work. Used on the CD and Vinyl exterior box set covers. Ex. F-1.



b. A copy of the Original Work, as previously cropped for the 1999 Album, then, with a blue wash applied in such a way that many of the original details and luminescence of the bubble have been lost. Used as an interior cover of both Vinyl and CD box sets, and on digital downloads and streams, and in all advertising. Ex. F-2.



c. A copy of the Original Work, as previously cropped for the 1999 Album, then, then, flipped from a positive to a negative image, and in addition, a gold/tan wash applied in such a way that a substantial amount of the details and luminescence have been lost. Used as interior cover and liner notes of Vinyl and CD box sets, respectively. <u>Ex. F-3</u>.



d. Copies of the Original Work (4 in one derivative and 2 in the other), as previously cropped for the 1999 Album, have been incorporated into these two separate derivative works, each adding many effects, including overlapping blue and yellow warped copies of the Original Work, and design elements, including a film strip, band photos, mock color print key, handwritten and printed titles, date of the original album, which effects and elements have then been selected, juxtaposed, superimposed and spacially laid out into collage-style arrangements.. Used as an interior cover in the Vinyl box set. <u>Ex. F-4 and F-5</u>.

 

e.  An animated version of the Original Work. Used in advertising, such as here, on Wilco's Instagram page.  <u>Ex. F-6</u>.



To play animation, go to:  https://www.instagram.com/wilco/p/CGXemwNj6TW/

40.  On its own marketing materials, Defendants Rhino and Wilco even admit that "the iconic cover art is revisited and reimagined with deluxe treatments, including metal foil packaging."  That is, Defendants themselves admit to having created derivative works based on the 1999 Album cover which 1999 Album cover substantially consisted of the Original Work.

41.  In or about June of 2021, Anne first discovered that Defendants had created and distributed the 2020 Album.

42.  Unable to obtain Invoice 19353 from VCG or Getty, in or about June of 2021, Anne sent an email to WMG Business Affairs executive, Gene Lee, requesting a copy of Invoice 19353, which Invoice 19353 Lee failed to provide.  <u>Ex. G.</u>

43.  Wilco further designed and sold Covid face masks ("Face Masks") with constituent elements of the Original Work on them through the Wilco Site's online store.  True and accurate copies are attached as <u>Ex. H.</u>

44.     Anne discovered the Face Masks around the same time she discovered the 2020 Album and the 2009 Reissue.

45.     Wilco was not authorized to use the Original Work to create, distribute or advertise the Face Masks.  Upon information and belief, Wilco made no attempt to confirm rights with the Warner Entities, independently investigate such rights, or directly seek Plaintiff's permission.

46.     The Warner Entities distributed, and continue to distribute, the 2020 Album through the Rhino, Wilco and Kung Fu Sites, and through other online and brick-and-mortar wholesalers and retailers throughout the United States, e.g., Best Buy, Target, Walmart, and Amazon, and through the DSPs.  True and accurate copies of the webpages offering the 2020 Album for sale are attached as Ex. I.

47.     Defendants have also used one of the derivative covers from the 2020 Album ubiquitously in advertising, including on their websites, social media pages and those of third-party affiliated advertisers, displaying the derivative image disproportionately large in comparison to the text on the page. True and accurate copies of sample webpages are attached as Ex. J.

48.     On September 18, 2023, Anne sent Defendants jointly a letter demanding that they cease and desist distributing the 2020 Album and the Face Masks, and any products or advertising in connection the 2020 Album and the Face Masks; demanding a credit and copyright notice be placed on all advertising of the 1999 and 2009 albums and on any future retail versions of those albums and preserving all evidence.  Only the Face Masks were removed.

49.     On January 2, 2024, Anne sent Defendants another email demanding that the 2020 Album and advertising of it be removed from sale and display.  Yet, other than the Face Masks, Defendants have failed to remove such materials from advertising and none of the 2020 Album products have been removed from the stream of commerce.

50.     Defendants are sophisticated for-profit businesses with full knowledge of the strictures of federal copyright law, each owning robust portfolios of intellectual property that each actively polices and vigorously protects from infringement, as demonstrated by the "©" copyright notices featured on each's website.

51.     Each of Defendants are represented by legal counsel steeped in intellectual property law and rights clearances and the Defendant Warner Entities employ staff whose job includes in-depth rights research and clearance, including, presumably, attorneys Lui and Herman, who are credited for "Legal" on the 2020 Album.

52.     Defendants provided Anne a one-page photo license dated January 20, 1999, and stamped "April 12, 1999" that references Summerteeth and purports to license a photo for use in connection with the "Upcoming Album" (the "Warner 1-pager").

53.     The Warner 1-pager does not describe the photo being licensed.

54.     The Warner 1-Pager does not grant any right to modify or otherwise make derivatives of the image licensed, nor does it grant any merchandising rights, and instead granted only "reproduction" rights in the "Photograph" licensed.

55.     Yet, upon information and belief, none of Defendants made any attempt to review any other license-related documents that might exist, nor did they make any other inquiry or investigation of their rights, or lack thereof, before using the Original Work in the preparation, sale, distribution, sublicense, and advertising of the 2020 Album, Animation or Face Masks.

56.     Upon information and belief, at no time in the last 25 years have the Warner Entities ever provided Wilco or Azerrad a copy of the Warner 1-Pager, Invoice 19353, or any documentation of the rights in the Original Work, nor has Wilco or Azerrad asked Warner any of the Warner Entities for it, until this dispute was brought to Defendants' attention. It is not even

clear who, as between the Warner Entities and Wilco, is responsible for legal clearances, as neither appears to be fully apprised of what the other is doing, or not doing.

**C. Defendant's Failure to Provide Attribution Required by the DMCA.**

57. Upon information and belief, Defendants knew or had reasonable ground to know, that the copyright management information ("CMI") for the Original Work was conveyed on:

    a. The Corbis Site, on which Jack's name and copyright notice appeared in connection with the Original Work continuously from 1999-2016 and to which both Tweedy (of Wilco) and employees of the Warner Entities had access and did in fact access in selecting the Original Work for license;

    b. Invoice 19353, which was provided to Warner Records and/or the Warner Entities and which neither Warner Records nor any of the Warner Entities provided to Wilco; and

    c. Any Metadata embedded in the Original Work's digital file given to Defendants by Corbis, which, on information and belief, Warner Records and/or Rhino gave to Wilco, the other Warner Entities and their agents.

58. In addition, to whatever extent Azerrad was not previously aware that Jack was the author of the Original Work, on information and belief, Azerrad again saw Jack's name in connection with the Original Work on an online forum post, dated in 2009. The poster linked to an article that showed images by John G. Moebes, including the Original Work, that the article author had obtained from the Corbis Site. Until that time, the Original Work had never been associated with Jack except on the Corbis Site.

59. Azerrad could also have re-discovered that Jack was the author of the Original Work again when preparing the 2020 Album had he typed the words "Summerteeth cover art" or "Summerteeth cover photo" in Google, as the same 2009 forum post would have come up as the second link.

60. Despite Defendants having access to all such sources of CMI, which Defendants could

not have reasonably avoided seeing or accessing, Defendants distributed Plaintiff's copyrighted material: (a) without proper attribution of CMI; and (b) with misleadingly false CMI, in each case, on digital and analog materials in connection with the sale and advertising of the 2020 Album, the Animation and Face Masks as follows:

a. Coupled with Defendants' omission of a credit for Jack Moebes for the original 1999 Album cover, Defendants gave increasingly misleading credits on analog copies of the 2020 Album to Justine Parsons ("Parsons"). The credit for Parsons morphed from "Band Photography" on the 1999 Album to "Photography by Justine Parsons" on the 2009 Reissue to "Original Package Photography" on the 2020 Album.

b. Defendants gave Azerrad the credit "Art Direction and Design" on the 1999 Album CD, which became "Design by Lawrence Azerrad for LADdesign" on the 2009 Reissue and "Original and deluxe edition art direction and design by Lawrence Azerrad" on the 2020 Album, while omitting any credit to Jack Moebes.

c. To add insult to injury, and even more misleadingly, Defendants included the following advertising copy when advertising the 2020 Album: "All versions of Summerteeth: Deluxe Edition – Black Vinyl, Color Vinyl, CD – are designed by original Summerteeth art director Lawrence Azerrad." followed by the misleading language: "The iconic cover art is revisited and reimagined with deluxe treatments, including metallic foil packaging." Defendants did not clarify that the iconic cover "photo" on the 1999 Album was created by Jack Moebes, which created the inference that the 1999 Album cover photo was created by Azerrad.

61. Because of the falsely misleading advertising, not only did Warner's agent Gene Lee infer that Azerrad created the Original Work for the 1999 Album cover, various other third parties similarly inferred that either Parsons created the Original Work for the 1999 Album cover or that the Original Work on the 1999 Album cover was in the public domain as it did not bear a copyright notice. True and accurate copies of such third-party websites are attached as Ex. K.

62. Rhino and Wilco each placed only their own copyright notices on webpages on which

the only photo on the webpage was the Original Work or a derivative of the Original Work, even though Rhino and Wilco knew that they did not own the copyright in the Original Work. Thus, they implied that Rhino and Wilco owned the copyright in the Original Work.

## COUNT I
### (Copyright Infringement, 17 U.S.C. § 501)

63. Plaintiff repeats the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

64. The Original Work, and all constituent elements of the Original Work included in the 2020 Album covers and Animation, are sufficiently original and creative to constitute copyrightable subject matter under the Copyright Act.

65. Plaintiff complied with the laws of the Copyright Act and all laws governing copyrights.  The Original Work, including its copyrightable constituent elements, was timely registered with the U.S. Copyright Office by Corbis on behalf of Plaintiff's predecessor-in-interest within the same year as first publication, entitling Plaintiff's copyright to a presumption of validity.

66. Defendants were given by Corbis and each other direct access to digital scans of the Original Work and later generation copies of the Original Work. They reproduced actual copies, or substantially similar expressions, of all or part of the copyrightable constituent elements of the Original Work on each of the album covers (including on the cover of the liner notes) of the 2020 Album and in the Animation.

67. Without authorization to do so, and with respect to each cover of the 2020 Album as a whole, and the box sets as a whole, as well as the Animation as a whole, Defendants prepared, or caused to be prepared, independently original and creative art productions, abridgements or other forms of work that incorporated the Original Work and/or its copyrightable constituent elements, and added their own editorial revisions, annotations, elaborations, arrangements or other

Case 1:24-cv-00069   Document 1   Filed 03/08/24   Page 16 of 23

modifications. Thus, each cover, box set and Animation represented, each as a whole, an original and creative work of authorship or "derivative work" based on the Original Work and/or its copyrightable constituent elements.

68. Defendants also contributorily and vicariously contributed to others' preparation, reproduction, display, sale, distribution, and advertising of the derivative works of the 2020 Album and the Animation which, thereby, and unless enjoined, will continue to infringe, Plaintiff's exclusive derivative copyright right in the Original Work in violation of 17 U.S.C. § 501 *et seq.*

69. The Defendant Warner Entities materially contributed to the infringing activity of Wilco, Kung Fu and others.

70. The Defendant Warner Entities further benefited from the infringing activity of Wilco, Kung Fu and others.

71. The Defendant Warner Entities had the ability to supervise the infringing behavior of Wilco, Kung Fu and others, but did not do so.

72. The Defendant Wilco materially contributed to the infrining activity of Kung Fu and others.

73. To whatever extent that Defendants' actions were not actually intentional, at a minimum, Defendants' clearance procedures, or lack thereof, in addition to their complete failure to make any investigation into whether they had the right to make derivative works, their failure to coordinate and communicate to ensure no such infringement, and their failure to remove the infringing materials upon Plaintiff's repeated requests, *inter alia,* amounted to recklessness or willful blindness and a willful and in wanton disregard of Plaintiff's rights.

74. At the time that Defendants willfully infringed Plaintiff copyright, Plaintiff (or one of

its predecessors-in-interest) exclusively had authority to permit Defendants to make derivatives of the Original Work and did not do so. Nor did Defendants request any such right to do so.

75. The actions of Defendants are and were without the permission, license, or consent of any entity with authority to provide the same. Defendants have produced no license from Plaintiff or Corbis that expressly or impliedly grants Defendants the right to make derivatives of the Original Work nor, indeed, any license that even clearly identifies the Original Work as the subject of a license.

76. The wrongful acts of Defendants have caused, and are causing, great injury to Plaintiff, and unless this Court restrains Defendants from further and continuing commission of said acts, Plaintiff will suffer irreparable injury. Thus, Plaintiff seeks a declaration as to each cover (including the cover of the liner notes) of the 2020 Album and as to the Animation that Defendants are infringing Plaintiff's copyright and an order under 17 U.S.C. § 502 enjoining Defendants from any further reproduction, display, distribution, and advertising of the 2020 Album.

77. As a result of the acts of Defendants alleged herein, Plaintiff has suffered, and is suffering, substantial damage to Plaintiff's business in the form of loss of profits, injury to goodwill and reputation, and the dilution of the value of Plaintiff's copyright, all of which are not yet fully ascertainable.

78. Defendants' use of full-scale depictions of one of the derivatives, almost like a trademark, as well as the Animation, to draw attention to their websites, downloads and streaming pages and a myriad of third-party websites, blogs, product reviews, paid advertising, etc. and their distribution of the infringing 2020Album itself has translated into substantial ill-gotten commercial advantage and revenue generation for Defendants, including, but not limited to, revenue generated

not only from the products themselves, but also by drawing attention to their websites where other of their products are sold.

79.    Plaintiff seeks actual or statutory damages, at Plaintiff's election, in an amount to be proven at trial for the infringement of the Original Work. Pursuant to 17 U.S.C. § 505, Plaintiff also seeks Plaintiff's attorneys' fees, costs, and pre-judgment interest.

WHEREFORE, Plaintiff Bubble Girl asks this Court to enter a judgement finding that Defendants have infringed upon Plaintiff's rights to the Original Work with regards to the 2020 Album (Summerteeth Deluxe Edition) in violation of 17 USC § 501 *et seq*. and award damages and monetary and other relief as follows:

    a.  Finding with respect to each derivative included in the 2020 Album and Animation that Defendant infringed Plaintiff's copyright interest in the Original Work by modifying it without a license or consent;

    b.  At Plaintiff election, for an award of actual damages and disgorgement of Defendants' profits attributable to the infringements, or statutory damages as provided by 17 USC § 504 in an amount more $150,000;

    c.  For an order pursuant to 17 USC § 502(a) enjoining the continued publications of the 2020 Album and Animation;

    d.  For costs of litigation and Plaintiff's reasonable attorney's fees against Defendants pursuant to 17 USC § 505;

    e.  For pre-judgement interest as permitted by law; and

    **f.**  Any other relief that this Court deems just and proper.

## COUNT II

### (Copyright Infringement, 17 U.S.C. § 501)

80.    Plaintiff repeats the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

81.    Plaintiff owns a valid copyright in each constituent element of the Original Work that is pertinent to this dispute, including any such constituent elements included in the Face

Masks, because all such constituent elements are sufficiently original and creative to constitute copyrightable subject matter under the Copyright Act and such copyright was timely registered.

82.     Defendants Wilco and Kung Fu reproduced actual copies, or substantially similar expressions, of all or part of the copyrightable constituent elements of the Original Work on, and/or created a derivative work of the Original Work in, the Face Masks and, without any authorization to do so, reproduced, sold, distributed and displayed images of the Face Masks on the Wilco Site, the Kung Fu Site and elsewhere, thereby infringing Plaintiff's copyright in the Original Work.

83.     Defendant Warner Entities induced, caused, or materially contributed to Wilco's and Kung Fu's infringing conduct. Defendant Warner Entities had reason to know that Wilco's reproduction of the Original Work on merchandise, and the sale of such merchandise, was without any authorization; they were in a position to monitor Wilco's conduct and to warn Wilco of a lack of any such authority; and then provided Wilco, directly or indirectly, with digital scans or later generation copies of the Original Work.

84.     Defendants, directly or indirectly, also knowingly induced, caused, or materially contributed to the infringing conduct of third parties in connection with the Face Masks and/or have obtained direct benefits (whether monetary or not) therefrom while possessing the right and ability to control the infringing conduct of third parties.

85.     To the extent that Defendants' actions were not actually intentional, at a minimum, Defendants' clearance procedures, or lack thereof, in addition to their complete failure to make any investigation into whether they had the right to make merchandise, including the Face Masks, their failure to coordinate and communicate to ensure no such infringement, *inter alia,* amounted to recklessness or willful blindness and a willful and in wanton disregard of Plaintiff's rights.

86. Plaintiff acknowledges that Defendant Wilco removed the Face Masks from the Wilco Site and other sites under its authority when Plaintiff informed Wilco of the infringement.

87. As a result of the acts of Defendants alleged herein, Plaintiff has suffered substantial damage to Plaintiff's business in the form of loss of profits, injury to goodwill and reputation, and the dilution of the value of Plaintiff's rights, all of which are not yet fully ascertainable.

WHEREFORE, Plaintiff Bubble Girl asks this Court to enter a judgment finding that Defendants have infringed upon Plaintiff's rights to the Original Work with regards to the Face Masks in violation of 17 USC § 501 *et seq.* and award monetary and other relief as follows:

   a. Finding that Defendant infringed Plaintiff's copyright interest in the Original Work by modifying the Original Work and reproducing such derivatives and/or constituent elements of the Original Work on the Face Masks without a license or consent;

   b. At Plaintiff's election, for an award of actual damages and disgorgement of Defendants' profits attributable to the infringements, or statutory damages, as provided by 17 USC § 504 in an amount more than $150,000;

   c. For costs of litigation and Plaintiff's reasonable attorney's fees against Defendants pursuant to 17 USC § 505;

   d. For pre-judgement interest as permitted by law; and

   e. Any other relief that this Court deems just and proper.

## COUNT III
### (For Violations of the DMCA 17 U.S.C. § 1202 (a) and 1202 (b))

88. Plaintiff repeats the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

89. Because Defendants knew or should have known that the 2020 Album, the Animation and the Face Masks infringed the Plaintiff's copyright; because Defendants knew or should have known that they omitted required CMI and used falsely misleading CMI in digital and

analog materials in connection with the infringing products; and because Defendants knew, or had reasonable ground to know, that omitting required CMI and providing falsely misleading CMI would serve to induce, enable, facilitate or conceal their own infringement, Defendants violated both 17 U.S.C. §§ 1202 (a) and (b) of the DMCA.

90.     Defendants further knew, or had reasonable ground to know, that their omission of required CMI and providing falsely misleading CMI would, and did, lead to third party infringements, and indeed, such infringements were, and continue to be, rampant online.

91.     Such violations by Defendants of the DMCA were willful in that Defendants knew or should have known that their actions would deprive Plaintiff rights mandated by law.  Their failure to make more than a trivial investigation to determine the correct attribution of the Original Work or even the requirements for same, their failure to coordinate and communicate to ensure compliance with the DMCA and any applicable Corbis Terms, and, except for Wilco, their failure to provide credit when informed of the omission and misleading advertising copy, *inter alia,* amounted to recklessness or willful blindness.

WHEREFORE, Plaintiff Bubble Girl asks this Court to enter a judgement finding that Defendants have infringed upon Plaintiff's rights to the Original Work with regards to the 2020 Album (Summerteeth Deluxe Edition) in violation of 17 USC § 1201 *et seq*. and award monetary and other relief as follows:

> a.  For a finding that with knowledge or reason to know that Defendant infringed Plaintiff's copyright interest in the Original Work, Defendants failed to include required CMI, and placed falsely misleading CMI on infringing materials with knowledge or reason to know that such actions would induce, enable, facilitate or conceal their infringement in violation of 17 USC § 1202 (a) and 17 USC §1202 (b).;
>
> b.  At Plaintiff's election, for an award of actual damages and disgorgement of Defendants' profits attributable to the infringements, or statutory damages as provided by 17 USC § 1203(b)(3) and (c);

c.  For an order pursuant to 17 USC § 1203(b)(1) enjoining the continued publication and distribution of misleading CMI, and, to the extent of any non-infringing products and advertising incorporating the Original Work, requiring Defendants to add Jack's CMI.

d.  For costs of litigation against Defendants pursuant to 17 USC § 1203(b)(4);

e.  For Plaintiff's attorney's fees pursuant to 17 USC § 1203 (b) (5);

f.  For pre-judgement interest as permitted by law; and

g.  Any other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Per Fed. R. Civ. P. 38, Plaintiff demands trial by jury of all issues so triable under law.

Dated:  March 8, 2024                                   Respectfully Submitted,

*s/ David M. Wilkerson*
David M. Wilkerson
NC State Bar No. 35742
The Van Winkle Law Firm
11 N. Market Street
Asheville, NC 28801
Phone:   (828) 258-2991
Fax:       (828) 257-2767
dwilkerson@vwlawfirm.com

Jan I. Berlage (*pro hac vice* to be filed)
Gohn, Hankey & Berlage LLP
201 North Charles Street, Suite 2101
Baltimore, MD 21201
410-752-0892 (direct)
JBERLAGE@GHSLLP.com

*Counsel for Plaintiff Bubble Girl, LLC*